IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANURAG BIYANI,<br><br>           Plaintiff,<br><br>    vs.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security; UR M. JADDOU, Director, U.S. Citizenship and Immigration Services; CONNIE NOLAN, Acting Associate Director for Service Center Operations Directorate; and LOREN K. MILLER, Director, Nebraska Service Center;,<br><br>           Defendants. | 4:22CV3032<br><br>**MEMORANDUM AND ORDER** |

       This matter is before the court on cross-motions for summary judgment.[1] At issue, ultimately, is whether the United States Citizenship and Immigration Services (USCIS) properly denied Plaintiff's I-140 immigration petition by finding he did not qualify for an employment-based, first preference visa as an "alien of extraordinary ability" (*i.e.*, an EB-1A visa), *see* 8 U.S.C. § 1153(b)(1)(A). Plaintiff brings this action under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq*.

---

     [1] After the parties filed a Rule 26(f) report specifying that the court's review would be limited to the administrative record, a scheduling order was entered which set dates for the filing of cross-motions for summary judgment and briefing. See Filing 9. On August 24, 2022, the parties filed a joint motion for leave to amend their briefs (Filing 18), which was granted. See Filing 21. However, Plaintiff instead filed an amended motion for summary judgment with an attached brief (Filing 22). The court therefore treats Plaintiff's original motion for summary judgment (Filing 15) as having been withdrawn and superseded by the amended motion.

Plaintiff also alleges the court has jurisdiction to set aside the denial under the Mandamus Act, 28 U.S.C. § 1361. See Plaintiff's Complaint (Filing 1), ¶¶ 8-9, 103-11. However, it has been held that decisions to deny EB-1A visas are discretionary, and that 8 U.S.C. § 1252(a)(2)(B) explicitly strips the district courts of jurisdiction under the Mandamus Act. *Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 419-20 (11th Cir. 2009) (unpublished). *Accord*, *Karpeeva v. Roark*, No. 09-21278-CIV, 2010 WL 11505255, at *1 (S.D. Fla. Nov. 2, 2010), *aff'd sub nom. Karpeeva v. U.S. Dep't of Homeland Sec. Citizenship & Immigr. Servs. ex rel. DHS Sec'y*, 432 F. App'x 919 (11th Cir. 2011); *Bathazi v. U.S. Dep't of Homeland Sec.*, 667 F. Supp. 2d 1375, 1377 (S.D. Fla. 2009); *Abanov v. Gonzales*, No. CIV.A. H-06-3725, 2007 WL 2872765, at *3-5 (S.D. Tex. Sept. 28, 2007).

## STANDARD OF REVIEW

"Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." *Simmons v. Jarvis*, No. 8:13CV98, 2016 WL 4742256, at *10 (D. Neb. Sept. 12, 2016), *aff'd sub nom. Simmons v. Smith*, 888 F.3d 994 (8th Cir. 2018) (quoting *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014), *aff'd sub nom. Fulbright v. Murphy*, 650 Fed. Appx. 3 (D.C. Cir. 2016)). However, "the standard set forth in Rule 56(a) [of the Federal Rules of Civil Procedure] [2] does not apply because of the court's limited role in reviewing the administrative record." *Id.* (quoting *Coe v. McHugh*, 968 F. Supp.2d 237, 239 (D.D.C. 2013)). "In an APA case like this one, summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.'" *Friends of Animals v. Ross*,

---

[2] Under Rule 56(a), "[s]ummary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Iyawe v. Garland*, 28 F.4th 875, 881 (8th Cir. 2022) (quoting *Green Plains Otter Tail, LLC v. Pro-Env't, Inc.*, 953 F.3d 541, 545 (8th Cir. 2020). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

396 F.Supp.3d 1 (D.D.C. 2019) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)). *See Epp v. Nat. Res. Conservation Serv.*, 425 F. Supp. 3d 1142, 1149 (D. Neb. 2019) (deciding APA case on cross-motions for summary judgment); *see also United Food & Com. Workers Union, Loc. No. 663 v. United States Dep't of Agric.*, 532 F. Supp. 3d 741, 768-69 (D. Minn. 2021) "(In a challenge to an agency action under the APA, the dispute can usually be resolved on summary judgment because the entire case on review is a question of law.") (cleaned up); *Bettor Racing, Inc. v. Nat'l Indian Gaming Comm'n*, 47 F. Supp. 3d 912, 918 (D.S.D. 2014) ("The general standard set forth in Rule 56 does not apply where, as here, the parties are seeking this court's review of an administrative decision."), *aff'd*, 812 F.3d 648 (8th Cir. 2016).

"It is well-established that judicial review under the APA is limited to the administrative record that was before the agency when it made its decision." *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004). "By confining judicial review to the administrative record, the APA precludes the reviewing court from conducting a de novo trial and substituting its opinion for that of the agency. *Id.* (citing *United States v. Morgan,* 313 U.S. 409, 422 (1941)).

The agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Arbitrary and capricious is a highly deferential standard of review." *Adventist Health Sys./SunBelt, Inc. v. United States Dep't of Health & Hum. Servs.*, 17 F.4th 793, 803 (8th Cir. 2021). The court must defer to agency action so long as "an agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *Id.* (quoting *Org. for Competitive Mkts. v. U.S. Dep't of Agric.*, 912 F.3d 455, 459 (8th Cir. 2018), quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)). The agency action may also be declared invalid if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), or if it is "without observance of procedure required by law" *id.*, § 706(2)(D). Plaintiff's complaint seeks judicial review under each of these APA provisions.

3

STATUTORY AND REGULATORY BACKGROUND

The Immigration and Nationality Act (INA) permits first preference visa allocation for employment-based immigrants who are classified as "aliens of extraordinary ability." This classification is met if:

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
>
> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and
>
> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A).[3] The regulations define "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).

"A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." *Id.*, § 204.5(h)(3). "Such evidence shall include evidence of a one-time achievement (that is, a major, international recognized award), or at least three of the following:"

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
>
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding

---

[3] In contrast to other employment-based first preference immigrant visa classifications, the "extraordinary ability" classification does not require that the noncitizen have a job offer from a U.S. employer or a labor certification from the Department of Labor. *See* 8 C.F.R. § 204.5(h)(5).

4

achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

*Id.* "If the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility." *Id.*, § 204.5(h)(4).

8 C.F.R. § 103.2(b)(8), which applies to all types of benefit requests—and not just to petitions for aliens of extraordinary ability—explains what happens once an application has been received by the agency. It states:

5

>(i) If the evidence submitted with the benefit request establishes eligibility, USCIS will approve the benefit request, except that in any case in which the applicable statute or regulation makes the approval of a benefit request a matter entrusted to USCIS discretion, USCIS will approve the benefit request only if the evidence of record establishes both eligibility and that the petitioner or applicant warrants a favorable exercise of discretion. If the record evidence establishes ineligibility, the benefit request will be denied on that basis.
>
>(ii) If all required initial evidence is not submitted with the benefit request or does not demonstrate eligibility, USCIS in its discretion may deny the benefit request for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted within a specified period of time as determined by USCIS.
>
>(iii) If all required initial evidence has been submitted but the evidence submitted does not establish eligibility, USCIS may: deny the benefit request for ineligibility; request more information or evidence from the applicant or petitioner, to be submitted within a specified period of time as determined by USCIS; or notify the applicant or petitioner of its intent to deny the benefit request and the basis for the proposed denial, and require that the applicant or petitioner submit a response within a specified period of time as determined by USCIS.

8 C.F.R. § 103.2(b)(8).

In addition to the regulations, USCIS has a Policy Manual which outlines a two-step process for evaluating petitions for EB-1A "extraordinary ability" visas. As explained recently by the United States Court of Appeals for the Fifth Circuit:

>In 2010, USCIS issued a Policy Memorandum amending its Adjudicator's Field Manual to provide guidance to officers assessing extraordinary ability applications. In the memo, the agency adopted the two-step approach to adjudication outlined in *Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010). At the first step, the agency assesses whether the applicant submitted the required "initial evidence" listed in the regulation by a preponderance of the evidence. The agency then conducts a "final merits determination" to determine whether, as a

6

> whole, the evidence is sufficient to demonstrate that the applicant meets the "required high level of expertise."

*Amin v. Mayorkas*, 24 F.4th 383, 388 (5th Cir. 2022) (internal citations omitted).

At the time the *Amin* decision was issued, USCIS was in the process of migrating the adjudicator's field manual and other agency policy documents to a centralized, online repository called the Policy Manual. *Id.*, n. 1. The Policy Manual now is available online. It describes the "final merits determination" as follows:

> Meeting the minimum requirement of providing required initial evidence does not, in itself, establish that the person in fact meets the requirements for extraordinary ability classification. As part of the final merits determination, the quality of the evidence should also be considered, such as whether the judging responsibilities were internal and whether the scholarly articles (if inherent to the occupation) are cited by others in the field.

> In the second step of the analysis, the officer should evaluate the evidence together and consider the petition in its entirety to make a final merits determination of whether or not the petitioner has demonstrated that the person has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise, indicating that the person is one of that small percentage who has risen to the very top of the field of endeavor, indicating that the person is one of that small percentage who has risen to the very top of the field of endeavor. The officer applies a preponderance of the evidence standard when making this determination.

> An officer cannot predetermine the kind of evidence he or she thinks the person should be able to submit and deny the petition if that particular type of evidence (whether one of the prescribed types or comparable evidence) is absent. For example, an officer may think that if a person is extraordinary, there should be published articles about the person and his or her work. However, an officer cannot deny the petition because no published articles were submitted, so long as the petitioner has submitted evidence meeting the three qualifying criteria that demonstrates the person is in fact extraordinary. Approval or denial of a petition must be based on the type and quality of evidence

7

submitted rather than assumptions about the failure to address different criteria.

While a person may be stronger in one particular evidentiary area than in others, the overall impression should be that he or she is extraordinary. If the officer determines that the petitioner has failed to demonstrate eligibility, the officer should not merely make general assertions regarding this failure. Rather, the officer must articulate the specific reasons as to why the officer concludes that the petitioner has not demonstrated by a preponderance of the evidence that the person has extraordinary ability. As with all adjudications, if an officer believes that the facts stated in the petition are not true, and can articulate why in the denial, then the officer denies the petition and explains the reasons in the written denial.

If requesting additional evidence is appropriate, officers should provide some explanation of the deficiencies in the evidence already submitted and, if possible, examples of persuasive evidence that the petitioner might provide to corroborate the statements made in the petition. If a petitioner has submitted evidence that he or she believes establishes the person's extraordinary ability, merely restating the evidentiary requirements or stating that the evidence submitted is insufficient does not clarify to the petitioner how to overcome the deficiencies.

USCIS Policy Manual, Volume 6, Part F, Chapter 2, https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2 (footnotes omitted).

## DISCUSSION

As set out above, USCIS employs a two-step approach to adjudicating petitions for "extraordinary ability" visa classification under the INA. First, USCIS determines whether the initial evidentiary threshold is met—either through evidence of a one-time achievement (like a Nobel Prize or Olympic gold medal), or through meeting at least three of the ten regulatory criteria. 8 C.F.R. § 204.5(h)(3); *see Gu v. Mayorkas*, No. 19-CV-02496 (TSC), 2022 WL 4464904, at *1 (D.D.C. Sept. 26, 2022); *Onaghise v. Dep't of Homeland Sec.*, No. 3:20-CV-03033-X, 2022 WL 4073344, at *2 (N.D. Tex. Sept. 2, 2022); *Arbor Home, LLC v. Mayorkas*, — F.Supp.3d —, No. 21-CV-03737-BLF, 2022 WL 1620489, at *1 (N.D. Cal. May 23,

2022); *Krasniqi v. Dibbins*, 558 F. Supp. 3d 168, 176 (D.N.J. 2021); *Mishra v. Richardson*, No. 120CV991LMBTCB, 2021 WL 1566071, at *1, n. 1 (E.D. Va. Apr. 20, 2021); *Integrity Gymnastics & Pure Power Cheerleading, LLC v. United States Citizenship & Immigr. Servs.*, 131 F. Supp. 3d 721, 727 (S.D. Ohio 2015). Once this initial evidentiary threshold is met, USCIS at step two then conducts a "final merits determination," weighing the evidence submitted to determine whether it demonstrates extraordinary ability. *See Gu*, 2022 WL 4464904, at *2; *Onaghise*, 2022 WL 4073344, at *2; *Arbor Home*, 2022 WL 1620489, at *2; *Krasniqi*, 558 F. Supp. 3d at 176; *Mishra*, 2021 WL 1566071, at *1, n. 1; *Integrity Gymnastics*, 131 F. Supp. 3d at 734. "[A] reviewing officer may determine that a petitioner has satisfied three of the 204.5(h)(3) criteria, yet may nonetheless determine that the petitioner failed the final merits determination and thus does not qualify." *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 539 (S.D.N.Y. 2012).

Plaintiff argues that the two-step analysis described in the Policy Manual is contrary to the statutory and regulatory scheme, and that it was implemented without notice and comment. Similar arguments were made in *Amin* and rejected by the Fifth Circuit, with the court stating:

> The agency's reading is consistent with the governing statute and regulation. The regulation does not say that meeting the regulatory criteria presumptively qualifies an applicant for a visa. It addresses what evidence must "accompany[ ]" a petition. 8 C.F.R. § 204.5(h)(3). As most college applicants learn, submitting all the required application materials does not guarantee a favorable decision. What is more, the regulation labels the categories "*Initial* evidence" and states that applicants must submit evidence of "*at least* three" criteria. *Id.* (emphasis added). This word choice contemplates another step beyond submitting the enumerated evidence: if satisfying three criteria were enough, why would the agency invite proof of more? As we read it, the regulation's "initial evidence" provision provides color to the statute's "extensive documentation" requirement. *See* 8 U.S.C. § 1153(b)(1)(A). And the final merits determination speaks to the statute's requirement of "extraordinary ability which has been demonstrated by sustained national or international acclaim." *Id.* Amin's view is unmoored from the statute in not requiring an applicant to prove that essential requirement.

9

For largely these same reasons, the Policy Memo is valid without notice and comment. An agency must provide the public with notice and an opportunity to comment before it issues a final, legislative rule. 5 U.S.C. § 553(b), (c). Notice and comment is not required, however, for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(A). To determine whether a rule is legislative, we consider "whether the rule (1) 'impose[s] any rights and obligations' and (2) 'genuinely leaves the agency and its decision-makers free to exercise discretion.' " *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) (quotations omitted).

The Policy Memo does not impose any obligations on visa applicants. The statute and regulation require applicants to prove their extraordinary ability and to provide "extensive documentation" of the type listed in the regulation. The Policy Memo does not require anything more; it merely clarifies the order in which agency adjudicators evaluate the evidence. *Contrast Phillips Petroleum Co. v. Johnson*, 22 F.3d 616, 618-20 (5th Cir. 1994) (concluding that agency document that "developed new criteria" for valuing natural gas liquid products was legislative rather than interpretive).

Precedent confirms that agency documents like the challenged field manual can be issued without notice and comment. We held that a Veterans Administration manual similar to this one lacked the force of law. *United States v. Harvey*, 659 F.2d 62, 64–65 (5th Cir. 1981). Both manuals are internal publications intended to provide guidance to employees implementing agency policies. *Compare id.* at 63 (describing the VA manual as "an internal agency publication issued to employees engaged in loan servicing operations to provide procedural information and policy guidelines"), *with* POLICY MEMO, at 1 (explaining that the purpose of the amendment to the AFM is to ensure that extraordinary ability applications are adjudicated under a consistent standard). And both are phrased in permissive language. *Harvey*, 659 F.2d at 64; POLICY MEMO, at 5.

Other courts have applied the same logic to conclude that other portions of this USCIS manual do not create enforceable rights. *See, e.g., Diaz v. USCIS*, 499 F. App'x 853, 855 (11th Cir. 2012) (per curiam) (finding the manual's direction to immigration officers to allow I-130 petitioners to explain material inconsistencies in their applications

10

>nonlegislative); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 221-22 (E.D.N.Y. 2021) (finding the manual's determination that certain civil documents from Yemen are insufficient to establish claimed familial ties nonlegislative). Because the Policy Memo does not create legal rights or obligations, it is not a legislative rule subject to the notice-and-comment requirement.

24 F.4th at 391-92 (footnote omitted; emphasis in original).

Plaintiff alleges that a "final merits determination" is not referenced in either the statute authorizing immigration for people of extraordinary ability, 8 U.S.C. § 1153(b)(1)(A), or in the USCIS regulations setting evidentiary requirements for the statutory provision, 8 C.F.R. § 204.5(h)(3). See Plaintiff's Complaint (Filing 1), ¶¶ 83, 84. He further alleges there is no ambiguity in the term "initial evidence" as used in the regulations, and claims "the agency exceeded statutory authority by requiring further demonstration of evidence (beyond statutory and regulatory requirements at 8 USC § 1153(b)(1)(A) and 8 C.F.R. § 204.5(h)(3)) to meet a final merits review." *Ibid.*, ¶ 89.

Just as a court will defer to an agency's reasonable interpretations of the statute when it issues regulations in the first instance, the agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force. *Fed. Exp. Corp. v. Holowecki,* 552 U.S. 389, 397 (2008). Under *Auer v. Robbins*, 519 U.S. 452 (1997), the agency's position is accepted unless it is "plainly erroneous or inconsistent with the regulation." *Id.*, at 461 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). However, *Auer* deference applies only if a regulation is genuinely ambiguous. *Kisor v. Wilkie*, ⸺ U.S. ⸺, 139 S. Ct. 2400, 2415 (2019).

The Fifth Circuit in *Amin* found it unnecessary to decide whether the Policy Memo was entitled to deference because it "conclude that the agency's approach is consistent with the statute and regulation, the result is the same as if [the court] had deferred. 24 F.4th at 391-92, n. 6 (citing *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 114 (2002) (explaining that there is "no point" in deferring when the agency's view is "the position [the court] would adopt ... interpreting the [regulation] from scratch")). The undersigned agrees with the Fifth Circuit's interpretation of the

11

statutory and regulatory provisions, and finds no support for Plaintiff's argument that USCIS is not permitted to evaluate the evidence as a whole to determine whether the petitioner is an alien of extraordinary ability.

The undersigned also agrees with the Fifth Circuit's analysis of the notice-and-comment requirement and concludes that the Policy Memo, as now incorporated in Policy Manual, is valid. Notice and comment is not required for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b). This procedural issue is fully discussed in the *Amin* decision and requires no elaboration.

In summary, the two-step analysis USCIS utilizes to assess the qualifications of applicants for EB-1A visas is not "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), nor was it implemented "without observance of procedure required by law," *id*., § 706(2)(D). The court will now consider whether the decision to deny Plaintiff's immigration petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Plaintiff, a software engineer, submitted initial evidence which was intended to show that he met 5 of the 10 criteria for "extraordinary ability." Certified Administrative Record (CAR), Filing 11-4. USCIS issued a Notice of Intent to Deny on October 19, 2021, finding that sufficient documentation had been provided to show Plaintiff met 3 of the criteria, but failed to establish that he was an individual of extraordinary ability. The notice stated in part:

> The record contained evidence that the petitioner has published four articles in journals, abstracts or conference proceedings which have received approximately 76 citations. Thus, establishing the petitioner's authorship of scholarly articles in the field, in professional or major trade publications or other major media. While the number of published papers alone is not determinative of one's overall standing in the field, such a large disparity between the petitioner and those that are considered to be influential in the field indicates that you have not reached the same small percentage at the top of this field occupied by these writers. As such, USCIS finds that your four articles, does not

establish sustained acclaim in the field, or that the petitioner is one of the top of the field.

While the record did establish the petitioner has made contributions of major significance it has not established that he has sustained national or international acclaim or that he has risen to the very top of his field of endeavor. The record established that the petitioner contributed on projects …. Letters of support were submitted that detailed the petitioner's contributions to these projects and special tasks assigned to the petitioner during his employment with various companies, but the submission of solicited letters supporting the petition is not presumptive evidence of eligibility. USCIS may in its discretion use such letters as advisory opinions submitted by expert witnesses, but we are ultimately responsible for making the final determination of the alien's eligibility…. While the record has demonstrated the petitioner's original contributions, it has not established that the petitioner has sustained national or international acclaim.

The evidence has established that the petitioner as commanded a high salary or other significantly high remuneration for services, in relation to others in the field. The record did not show that the petitioner's wages are tantamount to an individual who is among that small percentage at the very top of the field of endeavor…. For example, the petitioner's [*sic*] did not demonstrate how the petitioner's salary compared to others at the very top of his field, or that he received notoriety or attention based on his earnings separating himself from others in the field or placing him in the upper echelon. In addition, the petitioner did not documents [*sic*] of high earnings from other employers, showing a consistent history and recognition from the field of the petitioner's extraordinary ability, to establish that he has garnered sustained national or international acclaim rising him to that small percentage who has risen to the very top of the field of endeavor. Therefore, the petitioner has not established that he is qualified for the benefit sought. USCIS does not find the petitioner to be an individual of extraordinary ability.

Pursuant to section 291 of the INA, whenever any person makes an application for an immigration benefit, he shall bear the burden of proof to establish eligibility. Accordingly, the petitioner must prove by a preponderance of the evidence, in other words, that it is more likely

13

> than not, that the beneficiary is qualified for the benefit sought…. After a careful review and analysis of all evidence within the record, USCIS finds that the petitioner has not established eligibility for the benefit sought.

CAR, Filing 11-3, pp. 156-57. Plaintiff was given 30 days to submit additional evidence, which was accomplished on October 19, 2021.

USCIS's final decision, issued on December 2, 2021, determined that Plaintiff had provided sufficient documentation to establish that he met 5 of the 10 criteria listed in 8 C.F.R. § 204.5(h)(3)—subparagraphs (iv), (v), (vi), (viii), and (ix)—but that his documentation failed to establish eligibility for subparagraph (ii), stating:

> Evidence submitted included an email pertaining to the petitioner's membership to [a council for his employer's engineering division]. According to the information provided in the email correspondence, "Members are only invited who have had a proven history of extraordinary ability in their field and are the top percentage of such field." Although the email repeats the regulatory language, they do not point to any governing authority establishing that membership with any of the associations require outstanding achievements, as judged by recognized national or international experts…. For the reasons discussed above, the petitioner did not demonstrate his membership in associations that require outstanding achievements, as judged by recognized national or international experts in their disciplines or fields.

CAR, Filing 11-3, p. 3. The decision then determined, with respect to the criteria for which there was sufficient documentation, that the evidence still failed to establish that Plaintiff is an individual of extraordinary ability:

> The initial evidence provided evidence that the petitioner has published four articles in journals, abstracts or conference proceedings which have received approximately 76 citations. Thus, establishing the petitioner's authorship of scholarly articles in the field, in professional or major trade publications or other major media. At the time of filing, the petitioner's top cited article, … had received 51 citations, not excluding self-citations by the petitioner and his collaborators. However, citations to one's published works does not equate to national or international acclaim. The statute requires "extensive

14

documentation" of sustained acclaim. Without providing sufficient context to show that this citation rate has translated into national or international acclaim for one particular author of the cited works, it cannot be concluded that the petitioner has garnered sustained national or international acclaim.

The petitioner submitted documentation to demonstrate he has been a member of [his employer's council and chair of a committee], thus establishing that he has judged the work of others. The regulation at 8 C.F.R. § 204.5(h)(3) provides that "a petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." Evidence of the petitioner's participation as a judge must be evaluated in terms of these requirements. The weight given to evidence submitted to fulfill the criterion at 8 C.F.R. § 204.5(h)(3)(iv), therefore, depends on the extent to which such evidence demonstrates, reflects, or is consistent with sustained national or international acclaim at the very top of the alien's field of endeavor. A lower evidentiary standard would not be consistent with the regulatory definition of "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F. R. § 204.5(h)(2). For example, judging a national competition for top athletes is of far greater probative value than judging a regional youth competition. The petitioner did not submit evidence of a correlation between acclaim for participation on a committee and/or council for his employer. Without evidence that sets the petitioner apart from others in his field, we cannot conclude that the petitioner enjoys sustained national or international acclaim.

The record established that the petitioner contributed on projects …. Letters of support were submitted that detailed petitioner's [contributions on certain projects]…. The evidence also included confirmation of the petitioner being the recipient of awards from [his employer], media articles in various publications …. The evidence did not establish how the petitioner's original contributions and leading or critical roles set the petitioner apart through a career of acclaimed work validating that the petitioner is one of that small percentage who has risen to the very top of the field of endeavor.

> The evidence has established that the petitioner [h]as commanded a high salary or other significantly high remuneration for services, in relation to others in the field. The record did not show that the petitioner's wages are tantamount to an individual who is among that small percentage at the very top of the field of endeavor. See 8 C.F.R. § 204.5(h)(2). For example, the petitioner's [*sic*] did not demonstrate how the petitioner's salary compared to others at the very top of his field, or that he received notoriety or attention based on his earnings separating himself from others in the field or placing him in the upper echelon. Therefore, the petitioner has not established that he is qualified for the benefit sought. USCIS does not find the petitioner to be an individual of extraordinary ability.
>
> The record, as a whole, does not establish the petitioner's eligibility for the benefit sought. The petitioner seeks a highly restrictive visa classification, intended for individuals already at the top of their respective fields, rather than those progressing toward the top. USCIS has long held that even athletes performing at the major league level do not automatically meet the statutory standards for classification as an individual of "extraordinary ability." … While the record shows that the petitioner's accomplishments have been well received and he is a valuable employee, the totality of the evidence does not indicate he has sustained national or international acclaim and he is among the small percentage at the top of his field.

CAR, Filing 11-3, pp. 4-5.

Plaintiff claims that "Defendants violated the APA by improperly evaluating evidence during the final merits determination." Plaintiff's Brief (Filing 22-1), p. 39. He asserts that "the denial did not actually consider the evidence as a whole" but "provides only a single-clause conclusion of the officer's overall impression of the evidence." *Ibid.*. p 37. Plaintiff also generally argues that "Defendants evaluated merely some of the evidence on a piece-by-piece basis and weighed whether each piece of evidence, individually (and not collectively), demonstrated that [Plaintiff] was at the top of his field," and "violated the APA by ignoring or inappropriately disregarding submitted evidence within the denial, or by falsely claiming that evidence did not exist …." *Ibid.*, p. 39. Plaintiff's arguments are unconvincing.

16

Although the reviewing officer determined that Plaintiff met 5 of the 10 criteria for "extraordinary ability," the written decision sufficiently explains why, when the evidence is considered as a whole, he does not qualify for an EB-1A visa. The court has also reviewed the administrative record in its entirety and finds that appropriate consideration was given to all evidence that was submitted by Plaintiff.

The "extraordinary ability" immigrant visa classification is "extremely restrictive." *Kazarian*, 596 F.3d at 1120 (comparing to less rigorous requirements for "exceptional ability" visas). Here, USCIS "examined the relevant data and articulated a satisfactory explanation for its action." *Adventist Health Sys./SunBelt, Inc.*, 17 F.4th at 803 (8th Cir. 2021). Plaintiff has failed to establish that the agency's decision was "arbitrary, capacious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this highly deferential standard of review, USCIS's decision to deny Plaintiff's I-140 immigration petition must be upheld.

IT IS THEREFORE ORDERED:

1. Plaintiff's Motion for Summary Judgment filed on July 15, 2022 (Filing 15) is deemed withdrawn, and superseded by Plaintiff's Amended Motion for Summary Judgment filed on August 26, 2022 (Filing 22).

2. Plaintiff's Amended Motion for Summary Judgment (Filing 22) is denied.

3. Defendants' Cross Motion for Summary Judgment (Filing 16) is granted, and Plaintiff's Complaint is dismissed with prejudice.

4. Judgment will be entered by separate document.

Dated this 29th day of November, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge